**CLOSED**

NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CYNTHIA LEVESQUE-CERKA, : | |
| : | Civil Action No. 06-6025 (SRC) |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| : | |
| MICHAEL J. ASTRUE, : | |
| COMMISSIONER OF SOCIAL : | |
| SECURITY, : | |
| : | |
| Defendant. : | |

**CHESLER**, District Judge

This matter comes before the Court on the appeal by Plaintiff Cynthia Levesque-Cerka ("Plaintiff"), of the final decision of the Commissioner of Social Security ("Commissioner") determining that she is not eligible for Social Security Disability Benefits or Supplemental Security Income Benefits under the Social Security Act ("the Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's decision is supported by substantial evidence and is hereby **AFFIRMED**.

## I. BACKGROUND

The following facts are undisputed. Plaintiff was born in 1962. She was last employed in February 2001 as a medical billing clerk in a doctor's office. She was fired for leaving early due to a snowstorm and subsequently collected unemployment insurance. On November 29, 2002,

she filed an application for Social Security Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"), alleging disability since February 1, 2001 due to "[d]epression, [b]ulging [d]isc [i]njury, [c]ervical [s]pine [i]mpairment, [s]evere [b]ack [p]ain, [h]erniated [d]isc, [f]ibromyalgia, [c]ardiac [a]rythmia, [and] [i]nsomnia[.]" (Tr. 51.) Plaintiff's claims were denied by the Commissioner initially and on reconsideration. Pursuant to Plaintiff's request, a hearing was held before Administrative Law Judge Dennis O'Leary ("the ALJ") on February 24, 2005, and the ALJ denied Plaintiff's claim in an unfavorable decision issued on March 16, 2005. After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became final as the decision of the Commissioner of Social Security. On December 15, 2006, Plaintiff filed the instant appeal of the Commissioner's decision.

## II.  DISCUSSION

**A.**   **Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Servs., 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla, but need not rise to the level of a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). The reviewing court must consider the totality of the evidence and then determine

whether there is substantial evidence to support the Commissioner's decision. See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993). If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973). "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." Sassone v. Comm'r of Soc. Sec., 165 F. App'x 954, 955 (3d Cir. 2006) (citing Blalock, 483 F.2d at 775).

**B.    Standard for Awarding Benefits Under the Act**

The claimant bears the initial burden of establishing his or her disability. 42 U.S.C. § 423(d)(5). To qualify for SSI benefits, a claimant must first establish that he or she is aged, blind, or "disabled[,]" 42 U.S.C. § 1381a, see 42 U.S.C. § 1382c, and DIB benefits require a showing "of disability[,]" 42 U.S.C. § 423. A claimant is deemed "disabled" under the Act if he

3

or she is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Disability is predicated on whether a claimant's impairment is so severe that he or she "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Finally, while subjective complaints of pain are considered, alone, they are not enough to establish disability. 42 U.S.C. § 423(d)(5)(A). To demonstrate that a disability exists, a claimant must present evidence that his or her affliction "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

## C.   **The Five-Step Evaluation Process**

Determinations of disability are made by the Commissioner pursuant to the five-step process outlined in 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

At the first step of the evaluation process, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[1] 20 C.F.R. §§ 404.1520(a)(4)(i), (b). If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied. Id.; Yuckert, 482 U.S. at 141.

At step two, the Commissioner must determine whether the claimant is suffering from a

---

[1] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

4

severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. 404.1520(c). In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered. Id. If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. §§ 404.1520(a)(4)(iii), (d). If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled under the Social Security Act. If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the Third Circuit found that to deny a claim at step three, the ALJ must specify which listings[2] apply and give reasons why those listings are not met or equaled. In Jones v. Barnhart, 364 F.3d 501 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." Id. at 505. An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant Listing." Scatorchia v. Comm'r of Soc. Sec., 137 F. App'x 468, 471 (3d Cir. 2005).

---

[2] Hereinafter, "listing" refers to the list of severe impairments as found in 20 C.F.R. Subpart 404, Part P, Appendix 1.

5

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (e). If the claimant is able to perform his past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv). In Burnett, the Third Circuit set forth the analysis required at step four:

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

Burnett, 220 F.3d at 120. If the claimant is unable to resume his or her past work, and his or her condition is deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy that the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. 20 C.F.R. §§ 404.1512(g), 404.1520(a)(4)(v), 404.1560(c)(1). If the ALJ finds a significant number of jobs that claimant can perform, the claimant will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(v). Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), in the fifth step, the Commissioner "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled." Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).

When the claimant has only exertional limitations, the Commissioner may utilize the Medical-Vocational Guidelines found in 20 C.F.R. Subpart 404, Part P, Appendix 2 to meet the

burden of establishing the existence of jobs in the national economy.  These guidelines dictate a result of "disabled" or "not disabled" according to combinations of factors (age, education level, work history, and residual functional capacity).  The guidelines also reflect the administrative notice taken of the numbers of jobs in the national economy that exist for different combinations of these factors.  20 C.F.R. Subpart 404, Part P, Appendix 2, Paragraph 200.00(b).  When a claimant's vocational factors, as determined in the preceding steps of the evaluation, coincide with a combination listed in Appendix 2, the guideline directs a conclusion as to whether an individual is disabled.  20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458 (1983).  The claimant may rebut any finding of fact as to a vocational factor.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(a).

     Additionally, throughout the disability determination process, the Commissioner must "consider the combined effect of all of the individual's impairments without regard to wehther any such impairment, if considered separately, would be of" sufficient severity to qualify the claimant for benefits.  42 U.S.C. § 423(d)(2)(B).  However, the burden still remains on the Plaintiff to prove that the impairments in combination are severe enough to qualify him or her for benefits.  See Williams v. Barnhart, 87 F. App'x 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability).

     Finally, while Burnett involved a decision in which the ALJ's explanation of his step three determination was so inadequate as to be beyond meaningful judicial review, the Third Circuit applies its procedural requirements, as well as its interpretation in Jones v. Barnhart, to every step of the decision.  See, e.g., Rivera v. Commissioner, 164 F. App'x 260, 262 (3d Cir. 2006).  Thus, at every step, "the ALJ's decision must include sufficient evidence and analysis to

allow for meaningful judicial review," but need not "adhere to a particular format."  Id.

        D.       The ALJ's decision

In brief, the issue before the ALJ was whether Plaintiff was disabled within the meaning of the Social Security Act since February 1, 2001.  The ALJ examined the record and determined that: 1) at step one, Plaintiff had not engaged in substantial gainful activity during the relevant time period; 2) at step two, prior to the date last insured, Plaintiff suffered from "a 'severe' impairment involving fibromyalgia and disorders of the back" but no severe impairment existed "regarding depression, asthma, . . . a cardiac condition[,]" or spinal impairments; 3) at step three, Plaintiff failed to "disclose any medical findings which meet or equal in severity the clinical criteria of" any impairment in the Listings; and 4) at step four, Plaintiff retained the residual functional capacity to perform her past relevant work, noting that she "stopped working because she was terminated, not due to an inability to physically perform the job."  (Tr. 19-22.)  In conclusion, the ALJ determined that Plaintiff was not under a disability as defined in the Social Security Act.  (Tr. 22.)

In coming to this determination, the ALJ relied on the records and reports of Dr. Cornelio Porras, Plaintiff's treating physician, Dr. Harold Goldstein, the individual who conducted Plaintiff's mental status consultive examination, and Dr. Michael Pollack, the individual who conducted Plaintiff's internal medical status consultive examination.  (Tr. 18.)  The ALJ rejected the opinion of the physician who conducted Plaintiff's Physical Residual Functional Capacity Assessment who found that Plaintiff had certain exertional limitations, explaining that,

> I have considered the opinions of the state Agency physicians
> (Exhibits 4F).  I acknowledge that such individuals are highly
> qualified and are experts in Social Security disability evaluation.
> Therefore, I must consider their findings as opinion evidence,
> except with respect to the ultimate determination of disability (20

> CFR 404.1527(f), SSR 96-6p). I find, however, that their
> assessment for the claimant's ability to perform the exertional
> demands of sedentary work, with the lifting and carrying of ten
> pounds, and standing and walking for two hours and sitting for six
> hours during the course of an eight hour day, with occasional
> postural limitations and the need to avoid concentrated exposure to
> extreme cold, extreme heat, and hazards is not consistent with the
> medical evidence. There is no basis for such restrictions. As noted
> above, the claimant is fully functional. She cares for her 22 month
> old daughter on a full time basis, drives [a] car, independently
> maintains self-care, and takes care of the household chores, with
> the exception of some of the heavier chores that she has her
> husband do or assist her with. Their opinions are not adequately
> explained and they are based on minimal findings. These
> physicians did not have the benefit of evidence submitted after
> their determinations and they were not afforded the opportunity to
> question the claimant and assess credibility at a hearing.
> Accordingly, the prior Agency determinations cannot be adopted
> (SSR 96-6p).

(Tr. 21; see also Tr. 155-62 (Ex. 4F, the Physical Residual Functional Capacity Assessment).)

The ALJ also discounted Dr. Porras' "declarations of disability[,]" reasoning that "[h]is opinion is broad based and is rendered upon an issue totally reserved for the Commissioner. Moreover, it is unsupported by any clinical or diagnostic finding and in variance with the weight of the medical evidence and the claimant's activities of daily living." (Tr. 21.)

E.      Plaintiff's Appeal

Plaintiff contends that the ALJ's decision should be reversed because: 1) the ALJ "misinterpreted Plaintiff's nonexertional limitations[,]" and 2) the ALJ "misquoted [Plaintiff's] testimony regarding activities of daily living and social functioning[.]" (Pl.'s Br. 19-22.) Additionally, Plaintiff argues that this case should be remanded to the ALJ for consideration of "new and material evidence submitted to the appeals council for the first time" (Pl.'s Br. 17-19), and that the "new evidence would likely to change the ALJ's assessment of Plaintiff's subjective complaints of pain[.]" (Pl.'s Br. 23-24.)

9

Plaintiff's arguments that the ALJ misinterpreted her non-exertional limitations and is "penaliz[ing] [Plaintiff] for attempting a normal life in the face of adversity" (Pl.'s Br. 22) focus on her fibromyalgia and the ALJ's treatment of her testimony at the hearing before him. Specifically, Plaintiff argues that the ALJ improperly interpreted "the testimony and the Activities of Daily Living Questionnaires[,]" and that her fibromyalgia is medically documented in the evidence presented. (Pl.'s Br. 22.) Plaintiff makes no assertions as to evidence supporting her other ailments claimed or the ALJ's treatment thereof. Despite her arguments, however, Plaintiff fails to demonstrate that the ALJ's analysis and conclusion are unsupported by substantial evidence.

The ALJ summarized Plaintiff's testimony as to her daily activities and her care for her daughter and then concluded that her activities and the medical evidence presented were incompatible. In summarizing Plaintiff's testimony and other evidence presented regarding her ailments, the ALJ wrote,

> [t]he claimant stated that she spends the day caring for her daughter. While her mother will come over a few days a week to help out a bit, she [conceded] that she is the primary caregiver of her daughter. The claimant also [] pays the bills, goes to the store, drives a car, independently maintains her personal care, cooks, and takes care of the household chores, with the exception of some of the heavier chores that she has her husband do or waits until he comes home in case she needs assistance.

(Tr. 20; see also Tr. 257-88 (Plaintiff's testimony before the ALJ).) Although the ALJ did not include Plaintiff's statements that she is not always able to perform all of these activities, Plaintiff was unclear as to how often she is limited in performance of the activities in her testimony presented at the hearing before ALJ, and Plaintiff testified that she engaged in all of the activities about which the ALJ wrote in the excerpt above. (Tr. 257-88.) Furthermore, the

**CLOSED**

ALJ did not dispute that Plaintiff's fibromyalgia constituted a "severe" impairment; however, he determined that the medical findings supporting the diagnosis and treatment for the disease were insufficient to show that those impairments "[met] or equal[ed] in severity the clinical criteria of any impairment listed in Section 1.00 of Appendix 1, Subpart P to Regulations No. 4."  (Tr. 19.) The ALJ explained that Plaintiff

> was diagnosed with fibromyalgia [by her] family doctor, a pulmonologist.  However, his records were vague and unsupported by clinical findings.  A consultive examination was within normal limits with the exception of a decreased range of motion in the [cervical] and lumbar spine.  The rest of the examination was within normal limits.  The claimant had a normal gait and station, no difficulties with transfers, and a full range of motion in the bilateral upper and lower extremities with no evidence of motor, strength, sensory, or neurological deficits.

(Tr. 20.)  The ALJ therefore explained why he did not believe that the medical evidence supported a finding of disability under the listings, and in doing so, he considered "objective medical facts[,]" examining physicians' diagnoses and expert opinions, and Plaintiff's testimony regarding the pain she suffers from.  (Tr. 18-23; see Blalock, 483 F.2d at 776.)  The ALJ also considered his determinations regarding the light work he deemed Plaintiff capable of in conjunction with her "educational background, work history and present age[,]" in concluding that Plaintiff remains capable of performing her past relevant work as a medical billing clerk.  (Tr. 21-22; see Blalock, 483 F.2d at 776.)  The ALJ followed steps one through four of the test established by 20 C.F.R. § 404.1520, rendering the fifth step unnecessary, and thoroughly explained his reasoning at each step, demonstrating that substantial evidence within the record supports his determination.  See 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff also argues that "[t]he ALJ's decision fails because he misquoted Plaintiff's

**CLOSED**

testimony regarding her daily activities, and her ability to function independently in work-related and non-work-related areas of her life." (Pl.'s Br. 19-20.)  This statement is based entirely on a portion of the ALJ's opinion of which a reading in context shows that "disability benefits" were mistakenly referred to instead of "unemployment benefits."  The context of the statement demonstrates that the cited phrase is no more than a clerical error, and the use of an improper word had no impact on the ALJ's ultimate decision.  A review of the entire passage demonstrates that the ALJ was unmistakably referring to unemployment benefits, not disability benefits, in explaining evidence that he found to demonstrate Plaintiff's ability to perform work-related activities:

> The claimant is alleging disability since February 1, 2001 due to a myriad of complaints including fibromyalgia, a herniated disc, severe back pain, a cervical spine impairment, a bulging disc injury, depression, cardiac arrhythmia, and insomnia.  However, the claimant testified that she stopped working after she was fired from her job for leaving early due to a snowstorm, not due to medical reasons.  Additionally, she testified that she collected unemployment benefits for six months after her termination and actively sought employment during that time.  <u>Eligibility for **disability** benefits are granted on the [pretense] that the beneficiary is physically able to work and actively looking for work, not due to a medical disability.</u>

(Tr. 19-20 (emphasis added); <u>see also</u> Tr. 263-64 (Plaintiff's testimony regarding being fired for leaving early due to a snowstorm).)  After this statement regarding unemployment benefits, the ALJ went on to discuss Plaintiff's pregnancy, which followed "shortly thereafter" her collecting unemployment benefits, and focused on the tasks that she was capable of performing in caring for her child.  (Tr. 20.)  As the quotation above demonstrates, the use of a single incorrect word does not demonstrate a lack of substantial evidence supporting the ALJ's decision; it does not

**CLOSED**

even demonstrate the existence of a substantive error.

Finally, Plaintiff asserts that this Court should remand Plaintiff's case to the ALJ for consideration of new evidence, which Plaintiff contends "would be likely to change the ALJ's assessment of Plaintiff's subjective complaints of pain[.]" (Pl.'s Br. 23-24; id. at 17-19.)  A remand to the Commissioner for consideration of new evidence is only appropriate where "the claimant has shown good cause why such new and material evidence was not presented to the ALJ."  Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001).  Plaintiff offers no reason for failing to present the evidence to the Commissioner for which she now seeks a remand short of a misestimation by prior counsel.  Instead, Plaintiff's attorney merely wrote, "[i]t is acknowledged that my predecessor did not supply adequate medical proofs to the ALJ at the time of the hearing[,]" reasoning that her "predecessor did not appreciate how difficult it would be to get the ALJ to understand the peculiar characteristics of fibromyalgia.  He also did not expect the ALJ to ignore Dr. Cooke's report outright." (Pl.'s Br. 17.)  Attorney miscalculation does not fall within the bounds of good cause, as demonstrated by the Third Circuit's reasoning in Matthews, where a major concern was preventing plaintiffs from withholding evidence as a means to obtain a rehearing at a later date, if needed.  See Matthews, 239 F.3d at 595.  Additionally, the documents Plaintiff is presently seeking a remand for review of are records from medical and psychological evaluations and other tests that took place from May 2005 to July 2006.  The time period under review in the underlying case is from February 2001 until the date of the ALJ's opinion on March 16, 2005.  See 20 C.F.R. § 404.620(a).

Further, although it is not argued in any detail by Plaintiff, this Court will address Plaintiff's complaint regarding the ALJ's failure to address the two "Multiple Impairments

13

**CLOSED**

Questionnaire[s]" provided by Dr. Henry Cooke, D.C., the chiropractor who treated Plaintiff from January 17, 2002 through at least February 8, 2005.  (See Tr. 178-85; Tr. 190-97 (the two questionnaires filled out by Dr. Cooke).)  The Third Circuit held that "a chiropractor's opinion is not 'an acceptable medical source' entitled to controlling weight" in determining whether an individual is eligible for DIB or SSI benefits.  Hartranft, 181 F.3d at 361.  Such an opinion may be considered, but even that is not required by statute.  20 C.F.R. § 416.913(d)(1) ("In addition to evidence from the acceptable medical sources . . . , we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work . . ." id. (emphasis added)); Hartranft, 181 F.3d at 361-62; see also Rios v. Barnhart, 57 F. App'x 99, 101 n.2 (3d Cir. 2003) (noting that the ALJ did not err in according little weight to a chiropractor's opinion).  Dr. Cooke's answers on the questionnaires spoke predominantly to Plaintiff's pain (Tr. 178-85; Tr. 190-97), which the ALJ determined, after analyzing the medical evidence in this case, "could not reasonably" result from Plaintiff's documented medical ailments.  (Tr. 19.)

This Court has reviewed the ALJ's decision and the record it is based on.  In summary, the ALJ examined the medical evidence of Plaintiff's complaints dating back to February 1, 2001 and concluded that Plaintiff retained the residual functional capacity to perform work at a light exertional level and remains capable of performing her past relevant work.  Although Plaintiff has pointed to evidence of the pain from which she claims to suffer that may contradict this conclusion, she has not demonstrated that the ALJ's determination was unsupported by substantial evidence.  Additionally, Plaintiff has failed to demonstrate that the new evidence, for which she seeks a remand for further review, is material or would change the outcome of this case.  She has also failed to show that good cause existed for it, or similar documents, not being

**CLOSED**

presented to the ALJ. In conclusion, the ALJ's decision was supported by substantial evidence and will be affirmed.

### III.  CONCLUSION

For the reasons stated above, this Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.


Dated: March 12, 2008

                                                  s/ Stanley R. Chesler
                                                 STANLEY R. CHESLER, U.S.D.J.